474 So.2d 808 (1985)
Robert Ira PEEDE, Appellant,
v.
STATE of Florida, Appellee.
No. 65318.
Supreme Court of Florida.
August 15, 1985.
Rehearing Denied September 4, 1985.
*809 James B. Gibson, Public Defender, and Larry B. Henderson, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., and Sean Daly, Asst. Atty. Gen., Daytona Beach, for appellee.
ALDERMAN, Judge.
Robert Ira Peede appeals his conviction for the first-degree murder of his estranged wife, Darla Peede, and his sentence of death. Finding no reversible error, we affirm his conviction and his sentence.
Intent on getting Darla to come back to North Carolina with him to act as a decoy to lure his former wife Geraldine and her boyfriend Calvin Wagner to a motel where he could kill them, Peede, on March 30, 1983, traveled from Hillsboro, North Carolina, to Jacksonville, Florida, on his motorcycle. He sold his motorcycle near Ormond Beach, took a cab to the airport, and flew to Miami. He attempted to call Darla at her daughter's residence several times, each time speaking with Darla's daughter Tanya because Darla was not at home. At 5:15 p.m., he called back and spoke with Darla who agreed to pick him up at the airport. Prior to leaving for the airport, however, Darla left very strict instructions with Tanya to call the police if she was not back by midnight and to give them the license plate number of her car because she may have been forced into the car. She was afraid of being taken back to North *810 Carolina and being put with the other people he had threatened to kill. She gave Tanya the telephone numbers of Geraldine and the police in Hillsboro, North Carolina. She left her residence with only her purse and took no other belongings that would evidence her intention not to return home that evening. Although she would normally call Tanya if she were going somewhere and not coming back for the evening, Tanya received no such call.
According to Peede, when Darla picked him up at the airport, she informed him that she planned to go back to her apartment and then to the beach the next day. He then directed her to drive north on Interstate 95, but, after gassing up Darla's car, they mistakenly got on the turnpike heading for Orlando. As they left the Miami area and the song "Swinging" came on the radio, Peede took his lock-blade knife and inflicted a superficial cut in Darla's side. In his confession, Peede described his belief that Darla and Geraldine had mutually advertised for sexual partners in a nationally publicized, pictorial "Swinger" magazine which he had seen while imprisoned in California.
Peede said that on the way to Orlando they stopped and picked up a hitchhiker who drove the car while they had intercourse in the backseat. The hitchhiker was dropped off in Orlando and Peede drove east on I-4 toward Daytona Beach. As they drove, the conversation again returned to the subject of Peede's belief that Geraldine and Darla had advertised in "Swinger" magazine. Approximately five to six miles outside of Orlando, Peede stopped the car on the shoulder of the road, jumped into the backseat, and, with his lock-blade hunting knife, stabbed Darla in the throat which resulted in her bleeding to death within five to fifteen minutes. Still determined to get back to North Carolina to kill Geraldine and Calvin, he proceeded up I-95. He left Darla's body in a wooded area in Camden, Georgia, and he threw the murder weapon out of the car window on his way to North Carolina. When he returned to his home in Hillsboro, North Carolina, he decided that he would kill Geraldine and Calvin while they were on their way to work. He loaded his shotgun and placed it beside the door. Before he could carry out his plan, the police arrived, and he was arrested. Darla's heavily bloodstained car was parked at his residence. In addition to his lengthier confession to the authorities, Peede wrote out and had witnessed the following short confession:
My name is Robert Peede, on March 31, 1983, I killed my wife Darla, by stabbing her in the neck with a Puma folding knife. This occurred on Hwy. 4 (interstate) about six miles east of Orlando Fla., in the back seat of Darla's 71 Buick.
I ask for the death penalty in this crime, to be carried out as soon as possible.
Robert Peede D.O.B. 6-30-44
Darla's body was found in the woods. She had a stab wound in the throat area which continued into the chest and into the superior vena cavae, a second stab wound nine inches below her shoulder in her side, and bruising on various parts of her legs and arms which the medical examiner characterized as defensive bruising. The contusions on her wrists evidenced a struggle.
Peede was convicted of first-degree murder. The jury recommended that the death penalty be imposed, and the trial court sentenced him to death.
Peede challenges his conviction and sentence on several grounds. He initially contends that the trial court reversibly erred in excusing him, at his own personal request, from attending portions of the guilt phase of his trial. He argues that because this was a capital trial, he was denied due process of law by the trial court's granting his request to voluntarily absent himself. He also alleges that the record fails to demonstrate a knowing and intelligent waiver of his right to be present. The main thrust of his argument is that the trial judge could not excuse him from attending his capital trial.
Relative to this claim, it appears that during voir dire and during the early *811 stages of the trial, Peede personally asked to be excused from trial on several occasions. The trial court told Peede that it would be in his best interest to be involved in the trial and denied his request. At one point, during the cross-examination of Geraldine, Peede interrupted the proceedings and disrupted the courtroom. Because of his outburst, he was escorted out of the courtroom until the cross-examination of Geraldine was completed. He was then brought back into the courtroom and remained there until the lunch recess, at which time he again requested to voluntarily absent himself from the trial. The court declined at that time to rule on Peede's personal request. After lunch, Peede's counsel advised the court that Peede had told him that he did not want to be present during the remainder of the trial and that he would physically resist being brought back into the courtroom. The court then took a short recess and, accompanied by counsel and the court reporter, continued the proceedings at the county jail. Peede advised the court that he was not ill, but he just did not want to return to trial. The court extensively questioned Peede as to whether he was knowingly and voluntarily waiving his presence at trial. Peede made it abundantly clear that he fully understood the significance of his waiver and that his absence was voluntary. After making a full and adequate inquiry of Peede, the trial court concluded:
Want to first note that, from the opportunity I had to see and talk to Mr. Peede in the jail facility, I'm satisfied that his decision not to be present for further proceedings in this case is a consideration or a decision that's made after weighing the consequences; it's a free and voluntary decision on his part, and it's not prompted by any illness that he may have or any outside factors being exerted upon him.
He has indicated on two or three prior occasions during the jury selection process and the trial proceedings in this case that he simply does not wish to be present any further.
There is no indication this is a temporary desire on his part or that a continuance would lead to a different decision, or if the case were continued for a while he would change his mind.
Has indicated he does realize the trial will go forward without his presence, and he does understand that.
... .
Mr. Peede does realize that his attorneys will continue acting on his behalf during these proceedings.
The court then carefully instructed the jury as follows, with regard to Peede's absence from the courtroom, so as to avoid the jurors' drawing any adverse inference from his absence that could prejudice his trial:
Members of the jury, after, well, during the lunch break it came to the Court's attention Mr. Peede did not wish to participate or be physically present during further proceedings concerning the trial.
I went up and talked to Mr. Peede personally with the Court Reporter and the attorneys who are present, and I'm satisfied this is a free and voluntary decision on Mr. Peede's part, and that it's not a decision that's made because of any illness he may be suffering or because of any improper pressures being placed on him.
Mr. Peede, Mr. Peede's absence is not to be considered by you in any way as prejudicial against him. He has the right to be present or to be absent, and he's chosen not to physically be present during these proceedings.
I will be checking with him later on today, and tomorrow also, just to make sure that is still his position.
He has not been disruptive in any way.
There's, I don't want you to think his presence here would cause any disruption or anything like that. He simply doesn't want to be here, and I can't compel him to be here if those are his desires.
The Florida Law and the Rules of Criminal Procedure specifically go to the defendant being absent. And I had to *812 make sure this is what he wanted to do. And that appears to be the case.
Peede returned to the courtroom for the sentencing phase of his trial.
The trial court's finding that Peede knowingly and voluntarily absented himself from the courtroom is supported by the record. Therefore, the issue of whether a defendant can voluntarily waive his presence at a capital trial is now squarely before us for the first time. A defendant has the constitutional right to be present at the stages of his trial where fundamental fairness might be thwarted by his absence. This right has been held by the Supreme Court of the United States to derive from the confrontation clause of the sixth amendment and the due process clause of the fourteenth amendment. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).
It is settled law that in a noncapital case the voluntary absence of a defendant after the trial has begun in his presence does not nullify what has been done and does not prevent completion of the trial, but rather operates as a waiver of his right to be present. Taylor v. United States, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973); Diaz v. United States, 223 U.S. 442, 32 S.Ct. 350, 56 L.Ed. 500 (1912); State v. Melendez, 244 So.2d 137 (Fla. 1971). In Diaz v. United States, the Supreme Court rejected the broad dicta in Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), that a trial can never continue in the defendant's absence.
The Supreme Court in Illinois v. Allen, although acknowledging that one of the most basic rights guaranteed by the confrontation clause of the sixth amendment is the right to be present in the courtroom at every stage of the trial, held that this right is not absolute. Making no distinction between capital and noncapital cases, the Supreme Court explicitly held that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he still insists on acting in a manner so disorderly, disruptive, and disrespectful of the court, that the trial cannot be carried on with his presence in the courtroom. The court reiterated its holding in Snyder v. Massachusetts, 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934), that, "No doubt the privilege (of personally confronting witnesses) may be lost by consent or at times even by misconduct." 397 U.S. at 342-43.
The Supreme Court in Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), expressly left open the question of whether presence at a capital trial may be waived. Moreover, we note that prior to 1975 when the Supreme Court spoke in terms of distinctions between capital and noncapital cases, Federal Criminal Rule 43 provided:
The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules. In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict. A corporation may appear by counsel for all purposes. In prosecutions for offenses punishable by fine or by imprisonment for not more than one year or both, the court, with the written consent of the defendant, may permit arraignment, plea, trial and imposition of sentence in the defendant's absence. The defendant's presence is not required at a reduction of sentence under Rule 35. (Emphasis added.)
Subsequent to 1975, however, rule 43 was amended to provide:
(a) Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.
(b) Continued Presence Not Required. The further progress of the trial to and *813 including the return of the verdict shall not be prevented and the defendant shall be considered to have waived his right to be present whenever a defendant, initially present,
(1) voluntarily absents himself after the trial has commenced (whether or not he has been informed by the court of his obligation to remain during the trial), or
(2) after being warned by the court that disruptive conduct will cause him to be removed from the courtroom, persists in conduct which is such as to justify his being excluded from the courtroom.
The notes of the committee on the judiciary relative to this amendment which became effective in 1975 state that "a defendant has waived his right to be present at the trial of a capital or noncapital case in two circumstances: (1) when he voluntarily absents himself after the trial has begun; and (2) where he `engages in conduct which is such as to justify his being excluded from the courtroom.'" (Emphasis added.)
In adopting Florida Rule of Criminal Procedure 3.180(b), relating to a defendant absenting himself from his trial, we, likewise, made no distinction between capital and noncapital cases. We have not, however, directly addressed this issue in the factual context of a capital case where the defendant has made a knowing and intelligent waiver of his right to be present during a crucial stage of his trial.
In Lowman v. State, 80 Fla. 18, 85 So. 166 (1920), this Court considered the claims of defendants for a new trial which were based on their momentary absences from the courtroom during their capital trials. This Court acknowledged the defendants' constitutional and statutory right to be present, but held these momentary absences were voluntary and did not result in any harm to the defendants.
More recently in Francis v. State, 413 So.2d 1175 (Fla. 1982), we reversed defendant's conviction because the trial court had proceeded with the jury selection process in his absence. Because we were unable to assess the extent of prejudice, if any, which Francis might have sustained by not being present to consult with his counsel during the time his peremptory challenges were exercised, we concluded that his involuntary absence without waiver by consent or subsequent ratification was reversible error. We specifically determined that the record did not affirmatively demonstrate that Francis knowingly waived this right or that he acquiesced in his counsel's actions.
In Herzog v. State, 439 So.2d 1372 (Fla. 1983), defendant was convicted and sentenced to death for first-degree murder. On appeal, relying on Francis v. State, defendant contended that the trial court erred in conducting critical stages of his capital trial in his absence. After the trial court noted defendant's absence, trial counsel waived defendant's presence and proceeded with the motion to suppress certain photographs. We held that reliance on Francis was misplaced and that continuation of this portion of the trial in defendant's absence was not error because, first, Francis involved involuntary absence as contrasted with Herzog's voluntary absence, and, second, Herzog's absence was not during a crucial stage of the trial. We expressly found it unnecessary to answer the question of whether a defendant's voluntary absence, during a crucial stage of a trial for a capital offense constitutes error, but we did say: "We continue to note, however, Lowman v. State, 80 Fla. 18, 85 So. 166 (1920)." 439 So.2d at 1376.
In Johnson v. Wainwright, 463 So.2d 207 (Fla. 1985), on an original petition for writ of habeas corpus, we addressed Johnson's argument that his appellate counsel was ineffective for failure to present on appeal the argument that the trial court had reversibly erred in allowing Johnson to be absent from the courtroom during the testimony of a witness at the sentencing phase. We held that the omission of appellate argument on the issue of Johnson's voluntary and requested absence from a portion of his trial was not a serious and substantial deficiency. In explanation, we said:

*814 The record of the trial in this case shows that appellant's absence from the courtroom during the testimony of a defense witness at the sentencing phase took place at the request of defense counsel, that defense counsel represented to the court that the witness, a psychologist, had requested it and that it had been agreed upon "by prior arrangement," and that the defendant himself expressed no objection but voluntarily removed himself from the courtroom. We have said many times that an appellant in a criminal case is not entitled to have his counsel press every conceivable claim upon appeal. It is not difficult to see how appellate counsel might well have decided not to argue this issue on appeal. That appellate counsel did not present the inventive and highly technical argument being brought before us now is not a basis for finding "a substantial and serious deficiency," Knight v. State, 394 So.2d 997, 1001 (Fla. 1981), "outside the wide range of professionally competent assistance." Strickland v. Washington, [466 U.S. 668] 104 S.Ct. 2052, 2066 [80 L.Ed.2d 674] (1984). Because defense counsel at trial not only explicitly waived the defendant's presence on his behalf but also affirmatively requested that he be allowed to leave the courtroom, representing to the court that this was the defendant's agreement and in his interest, appellate counsel could very reasonably have decided that the issue was not a promising one because of the waiver and the lack of prejudice to the defense.
463 So.2d at 211-12 (footnote omitted).
In Hooper v. State, 476 So.2d 1253 (Fla. 1985), the trial court denied Hooper's request to absent himself during voir dire of the jury. On appeal, Hooper contended that the trial court reversibly erred in denying his request not to be present. We rejected this contention, not because Hooper did not have the right to waive his presence, but rather on the basis of the trial court's weighing of the asserted ground for waiver against the importance of the defendant's presence during the individual voir dire of prospective jurors in the trial court's chambers.
Florida Rule of Criminal Procedure 3.180(b) which deals with a defendant's absenting himself from trial provides:
If the defendant is present at the beginning of the trial and shall thereafter, during the progress of said trial or before the verdict of the jury shall have been returned into court, voluntarily absent himself from the presence of the court without leave of court, or is removed from the presence of the court because of his disruptive conduct during the trial, the trial of the cause or the return of the verdict of the jury in the case shall not thereby be postponed or delayed, but the trial, the submission of said case to the jury for verdict, and the return of the verdict thereon shall proceed in all respects as though the defendant were present in court at all times.
This rule permits a trial begun in a defendant's presence to be completed if he voluntarily absents himself. As previously stated, in adopting this rule, we drew no distinction between capital and noncapital cases.
We now hold that just as in noncapital cases, the presence requirement is for the defendant's protection and, just as he can knowingly and voluntarily waive any other constitutional right, a defendant can waive his right to be present at stages of his capital trial if he personally chooses to voluntarily absent himself.[*]
*815 The Supreme Court of the United States has recognized that even in capital cases, a defendant's right to be present at his trial is not absolute and may be lost if the defendant becomes so disruptive that his trial cannot continue in his presence. In Illinois v. Allen, the Supreme Court said:
[C]riminal contempt has obvious limitations as a sanction when the defendant is charged with a crime so serious that a very severe sentence such as death or life imprisonment is likely to be imposed. In such a case the defendant might not be affected by a mere contempt sentence when he ultimately faces a far more serious sanction. (Emphasis added.)
397 U.S. at 345, 90 S.Ct. at 1061.
If a defendant's disruption of a capital trial can result in his removal and the continuation of the trial in his absence, then he should be able to knowingly and voluntarily waive his presence. Otherwise, a defendant who does not want to be present during the trial and who fully understands the consequences of his absence would be forced into the untenable position of having to disrupt the courtroom to such an extreme as to result in his removal, thereby seriously prejudicing his case. In this regard, the Supreme Court, in Illinois v. Allen, stated:
Trying a defendant for a crime while he sits bound and gagged before the judge and jury would to an extent comply with that part of the Sixth Amendment's purposes that accords the defendant an opportunity to confront the witnesses at the trial. But even to contemplate such a technique, much less see it, arouses a feeling that no person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold. Moreover, one of the defendant's primary advantages of being present at the trial, his ability to communicate with his counsel, is greatly reduced when the defendant is in a condition of total physical restraint.
397 U.S. at 344, 90 S.Ct. at 1061. Peede made it very clear that he did not want to be in the courtroom and that he would physically resist any effort to bring him back into the courtroom. Such conduct on Peede's part would have prejudiced him in the eyes of the jury. A defendant, even in a capital case, should not be forced to this extreme before he is allowed to voluntarily absent himself from the presence of the court.
In this case, the trial court took every precaution to ensure that Peede's waiver was knowing and voluntary and not due to illness or coercion of any nature. It carefully instructed the jury as to Peede's absence so as to avoid any prejudice to Peede for his having made the voluntary decision to absent himself from the courtroom. We find that the trial court did not exceed its authority or abuse its discretion.
We also find no reversible error in the removal of Peede from the courtroom for the brief period of the completion of the cross-examination of Geraldine. After the completion of her cross-examination, he was returned to the courtroom until the lunch recess at which time he made it absolutely clear that he did not wish to return to the trial proceedings.
Peede next argues that he wanted to represent himself, but the trial court forced appointed counsel on him. He states that prior to trial, court-appointed counsel filed a motion to continue the case and a motion to withdraw premised on Peede's desire not to have the case continued.
We find no merit to this claim. Peede has failed to demonstrate that he made an unequivocal, voluntary, and intelligent election to exercise his right of self-representation and to discharge his trial counsel. The record demonstrates that Peede's request to represent himself did not arise from any wish to conduct his entire trial in a particular *816 manner but rather arose from a dispute with his counsel as to whether they should seek a continuance in order to obtain psychiatric examinations of him and to interview a number of witnesses residing in other southern states. These things counsel felt were necessary to the defense. Peede's main objection was that he did not want a continuance because he wanted to go forward with his trial and get it over with. After hearing, the trial court concluded that Peede's acting as his own counsel would not secure him a fair trial at that point in time. Convinced that Peede's main objection to counsel was the continuance, the trial court determined that no unequivocal waiver had taken place and decided that the continuance was clearly warranted in order to prepare a sufficient defense. Later, prior to voir dire, Peede made it clear in the record that he wanted his court-appointed counsel to represent him. Later, during the course of trial, he expressed his desire that appointed counsel continue to represent him.
We also reject Peede's contention that the trial court reversibly erred in limiting defense counsel's closing argument. The trial court, at the close of testimony, only suggested thirty minutes for closing, but said that it never cut anyone off.
Peede further argues that the court committed reversible error in allowing the victim's daughter to testify that her mother told her that she was going to pick up Peede at the airport, that she was nervous and scared that she might be in danger, that her daughter should call the police if she was not back by midnight, that she was afraid of being with the other people he had threatened to kill, and that he would kill them all on Easter. He argues that this testimony was hearsay and inadmissible.
The state, in response, correctly points out that two of the statements relating to the victim's telling her to call the police if she did not return and that Peede had threatened to kill others in North Carolina were given at trial without any hearsay objection, and therefore the issue with reference to those statements was not preserved. Insofar as the other statements are concerned, the state contends, there is no basis for reversal. Peede's own statement presented to the jury established that he arranged for the victim to pick him up at the airport. Furthermore, the state urges that the daughter's testimony that her mother said she was scared was not prejudicial in light of the fact that the daughter testified that her mother seemed nervous and scared. Moreover, the state argues, those statements challenged below were properly admitted under the hearsay exception to show the declarant's state of mind which was relevant to the kidnapping charge which formed the basis for the state's felony murder theory.
We agree. The daughter's testimony in this regard established Darla's state of mind. Under the "state of mind" hearsay exception, a statement demonstrating the declarant's state of mind when at issue in a case is admissible. § 90.803(3)(a), Fla. Stat. (1983). In the present case, the victim's mental state was at issue regarding the elements of the kidnapping which formed the basis for the state's felony murder theory. Under section 787.01(1)(a), Florida Statutes (1983), it was necessary for the state to prove that the victim had been forcibly abducted against her will, which was not admitted by defendant. The victim's statements to her daughter just prior to her disappearance all serve to demonstrate that the declarant's state of mind at that time was not to voluntarily accompany the defendant outside of Miami or to North Carolina. We hold that the trial did not abuse its discretion in admitting the testimony at issue.
We also find no merit to Peede's contention that the court erred in refusing to grant his motion for judgment of acquittal based on the felony (kidnapping) murder theory.
In addition to reviewing the record in light of the errors asserted by Peede, we have reviewed the evidence pursuant to Florida Rule of Appellate Procedure *817 9.140(f), and we conclude that no new trial is required. Finding no reversible error, we affirm his conviction.
Peede also challenges his death sentence on several grounds. After the jury recommended that the death penalty be imposed, the trial court sentenced him to death. In support of its sentence, the trial court found as aggravating circumstances, proven beyond a reasonable doubt, that Peede was previously convicted of two felony crimes involving the use or threat of violence to some other person; that the murder was committed while Peede was engaged in the commission of a kidnapping; and that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. Relative to circumstances in mitigation, the trial court found:
(a) ...
Viewing the testimony of Dr. Robert Kirkland that the Defendant experienced a specific paranoia that the victim and his ex-wife, Geraldine Peede, were posing in nude magazines, the Court, giving the Defendant the benefit of the doubt, will consider it a mitigating circumstance. The Court also considered the rest of Dr. Kirkland's testimony and observed that this particular paranoia, had the facts been true, would not have called for or excused violent acts of the Defendant. Based on the totality of Dr. Kirkland's testimony, which included his opinion that the Defendant chose to act violently although capable of understanding the nature and consequences of his acts and to conform his conduct to the law, I find that although a marginal mitigating circumstance, it is outweighed by the single aggravating circumstance, standing alone, of the Defendant's prior crime of Murder in the Second Degree and Assault with a Deadly Weapon.

(b) The Court reviewed and considered the letters presented by the defense. They were from people in North Carolina who had known the Defendant and his parents. I found no mitigating factors in the letters.
(c) I found no other mitigating circumstance from anything presented in the sentencing hearing. (Emphasis added.)
Although conceding that his arguments regarding the constitutionality of Florida's capital sentencing statute have been previously rejected, Peede argues that this statute is unconstitutional. We disagree and decline to recede from our prior holdings.
We likewise reject Peede's argument that the trial court erred in finding that the murder was committed during the course of a kidnapping. This circumstance was proven beyond a reasonable doubt. Further, we find no merit to Peede's claim that the trial court and jury failed to consider particular mitigating factors.
Finally, Peede contends that the trial court erred in finding the aggravating circumstance that the murder of Darla was cold, calculated, and premeditated without any pretense of moral justification. Although we find that the evidence of premeditation is sufficient to support a finding of premeditated murder, there was no showing of the heightened premeditation, calculation, or planning that must be proven to support a finding of the aggravating factor that Darla's murder was cold, calculated, and premeditated. The record supports the conclusion that Peede intended to take Darla back to North Carolina as a lure to get Geraldine and Calvin to come to a location where he could kill them. It does not establish that he planned from the beginning to murder her once he had completed his plan in North Carolina. By prematurely murdering her at the time he did, he eliminated his bait.
Even absent this circumstance, however, we know that the result of the trial court's weighing process would not be different *818 because it expressly held that the one marginal mitigating circumstance that it found was outweighed by the single aggravating circumstance standing alone of the defendant's previous convictions of two felony crimes involving the use or threat of violence to some other person. We hold that the death sentence was properly imposed by the trial court.
Accordingly, finding no reversible error, we affirm Peede's conviction and death sentence.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
NOTES
[*] We are not persuaded otherwise by the opinion of the United States Circuit Court of Appeals, Eleventh Circuit, in Proffitt v. Wainwright, 685 F.2d 1227 (11th Cir.1982), cert. denied, ___ U.S. ___, 104 U.S. 508, 509, 78 L.Ed.2d 697 (1983), wherein that court stated that presence at a capital trial is nonwaivable. The federal court failed to acknowledge, and apparently did not consider, the change in Federal Criminal Rule 43, which change eliminated the distinction between capital and noncapital cases. Moreover, in the present case, we have a different factual context than Proffitt. In Proffitt, the Eleventh Circuit alternatively found that defendant had not knowingly or voluntarily waived his right to be present.