492 So.2d 712 (1986)
Lester WELLS and Jerry Wayne Weeks, Appellants,
v.
STATE of Florida, Appellee.
Nos. BC-432, BD-119.
District Court of Appeal of Florida, First District.
July 18, 1986.
Rehearing Denied August 19, 1986.
*714 James P. Judkins of Davis, Judkins & Simpson, Tallahassee, for appellant, Lester Wells.
Larry D. Simpson of Davis, Judkins & Simpson, Tallahassee, for appellant Jerry Wayne Weeks.
Jim Smith, Atty. Gen., John Tiedemann and Mark Menser, Asst. Attys. Gen., for appellee.
NIMMONS, Judge.
Jerry Wayne Weeks and Lester Wells appeal from convictions of two counts of first degree murder and one count of attempted first degree murder. We reverse and remand for a new trial.
Appellants were alleged to have murdered, on November 10, 1983, Billy Dewayne Wyche and his father, James E. Wyche, and to have attempted to murder Phillip Wayne Enfinger. Enfinger, who survived the attack, testified that he was to go camping with the Wyches. The plan was to meet at McCaskill's fish camp, a tin shed in the woods along the Escambia River. Enfinger arrived with his boat at the landing on Williams Lake, which empties into the Escambia River several miles from the fish camp. He proceeded towards the fish camp and, just before arriving there, the Wyches passed him in another boat and pulled up on the sandbar. Billy Wyche picked up two armloads of supplies and headed towards the camphouse. Enfinger saw Billy suddenly turn around with a terrified expression on his face and heard Billy shout. As Enfinger turned his boat away, he was shot out of it and fell into the water. He heard many shots being fired as he hung onto the side of the boat. Looking across the boat, he identified two men on the shore as the defendants, Jerry Wayne Weeks and Lester Wells.[1] After the two men on shore apparently left, the wounded Enfinger released the boat, drifted downstream, and was eventually able to report the incident and secure help.
At the scene, investigators found James Wyche's body in the water by his boat. Billy Wyche's body was found the next day. The investigators recovered shell casings, footprint impressions and some marijuana from the fish camp shed itself. None of this evidence was directly linked to the defendants.
The state's theory was that defendants had murdered the victims because Billy Wyche was a witness against them in a kidnapping case and because the Wyches had stolen marijuana from the appellants' fields. To that end, the state introduced several items of evidence. A taped statement given by Billy Dewayne Wyche to the police was introduced in which he said that he was kidnapped by the defendants and that they attempted to kill him by putting him in the trunk of his car and driving it *715 into the river. Billy's statement explained that this was done because he and his father had stolen marijuana from fields grown by defendants. Detailed information about the kidnapping investigation was introduced. Evidence that the defendants had been spotted near a marijuana field was also received.
Based on a conspiracy theory, evidence that Wilbur Weeks and Anthony Weeks had purchased guns, ammunition, a truck and registered a boat shortly before the homicides was also introduced.[2] Evidence of statements and acts by Wilbur and Anthony subsequent to the commission of the homicides was also introduced. None of the weapons or other instrumentalities described above was directly linked to the defendants or to the crime scene. The weapons recovered from the defendants, and from Wilbur and Anthony, were not used in the homicides.
Wells introduced several alibi witnesses who placed him elsewhere at the time of the murders. The jury returned guilty verdicts on all charges and the appellants were sentenced accordingly.
The first issue with which we deal relates to the admissibility of the taped police statement of one of the victims, Billy Dewayne Wyche, in which he described in detail his prior kidnapping by the defendants.[3] In the taped statement, which was played for the jury, Billy stated that the defendants maintained a field where they grew marijuana. He said that he and his father, James E. Wyche, had "ripped off" the marijuana field and that this was the reason why the defendants kidnapped and attempted to murder Billy. The state argues that the above evidence is relevant to show motive for the homicides and that the evidence is either not hearsay or, in the alternative, admissible under the state-of-mind exception to hearsay.
In a witness-elimination case, some evidence of the previous alleged crime is necessary and relevant to show motive of the defendants. Sireci v. State, 399 So.2d 964 (Fla. 1981). In the present case, the state's theory is that defendants killed the key state's witness in the kidnapping case. Evidence of the alleged kidnapping was relevant to this case.[4] In addition, evidence that the homicide victims stole marijuana from the defendants would likewise tend to show motive. Such evidence, if otherwise admissible  e.g. marijuana adequately linked to the defendants  would be properly received.
Although the evidence is relevant, it was nevertheless inadmissible as hearsay not qualifying under any recognized exception. The state argues that the tape recording was introduced only for the purpose of establishing that the statement was made, and was therefore not hearsay. Our review of the record demonstrates otherwise. The evidence was used as a predicate for other substantive evidence[5] in order to prove, as the state argued in closing, that the defendants were drug traffickers and used any methods available to protect their illegal business. Although there was testimony that the defendants were aware of the kidnapping investigation, there was no evidence to show that either of the defendants was aware that Billy Dewayne Wyche had given the tape-recorded statement. The conclusion is inescapable that this statement was admitted to prove the *716 truth of the matters contained therein and is therefore hearsay.
The statements contained on the tape do not fall within any hearsay exception. The state erroneously asserts that the tape-recorded statement is admissible under the state-of-mind exception which is provided for in Section 90.803(3), Florida Statutes. Under this exception, the statements could be admitted only to show the declarant's state of mind, not that of the defendants. Van Zant v. State, 372 So.2d 502 (Fla. 1st DCA 1979); Bailey v. State, 419 So.2d 721 (Fla. 1st DCA 1982). In the instant case, the declarant/victim's state of mind was not an issue in the case. Nor was the statement offered to prove or explain acts of subsequent conduct of the declarant. See Bailey v. State, supra. The state relies, in part, upon Peede v. State, 474 So.2d 808 (Fla. 1985). However, Peede is patently distinguishable. Peede was charged with murder under a felony (kidnapping)/murder theory. The Supreme Court held that the victim/declarant's statement to her daughter expressing her fear of the defendant prior to the victim's encounter with the defendant was relevant under the facts of the case to show the victim's state of mind and thus admissible under Section 90.803(3). Id. at 816. See, also Jenkins v. State, 422 So.2d 1007 (Fla. 1st DCA 1982) (hearsay statement of aggravated battery victim purportedly threatening the defendant held admissible under Section 90.803(3) on the issue of self defense.)
We also reject the state's argument that the tape recording of Billy Dewayne Wyche's statement was "real evidence", not "testimonial", and thus not objectionable hearsay.[6] The cases relied upon by the state, United States v. Onori, 535 F.2d 938 (5th Cir.1976) and Koran v. State, 213 So.2d 735 (Fla. 3d DCA 1968) are clearly distinguishable.
Therefore, although evidence of the prior alleged crime was admissible, Billy Dewayne Wyche's hearsay tape-recorded statement could not be used for that purpose.[7]
Appellants also challenge the admissibility of testimony by police officers concerning events which occurred at a "stakeout" near a marijuana patch in a wooded section of Santa Rosa County approximately two months prior to the subject homicides. One officer, hiding behind a pine tree near the patch saw a pit bulldog in the brush. A few minutes later, he heard several shots ring out, two of which hit the tree above his head. He did not see who fired the shots. Another officer had passed a pickup truck which was proceeding into the area. After receiving communication of the gunshots, she returned to the area, saw the truck and stopped it. There were four bulldogs in the back of the truck. Lester Wells was the driver and Jerry Wayne Weeks was the passenger. *717 There was a rifle in the truck. A consent search revealed a grocery bag containing a partial marijuana leaf. The leaf was not fresh. No arrest was made.
The state's theory was that the above evidence was relevant and material in the state's effort to establish that the defendants were involved in a "drug feud" with the Wyches. But the only evidence conceivably connecting the above incident at the marijuana patch with the state's drug feud theory was the inadmissible tape-recorded statement of Billy Dewayne Wyche and the fact that, after the homicides, the police found some marijuana in the shed where the Wyches intended to stay during their camping trip. Clearly, there was an insufficient predicate to establish the relevancy of the defendants' presence near the marijuana patch.
The state urges Jacobson v. State, 375 So.2d 1133 (Fla. 3rd DCA 1979) cert. denied 385 So.2d 758 (1980), as allowing such testimony. In Jacobson, the objectionable testimony was of a witness' involvement in other crimes that arguably involved the defendant. The defendant there was involved in organized criminal activity, and all the state's witnesses were convicted felons. The court stated:
[T]he defendant's criminal life-style was so pervasive and so integral to the commission of the crime charged that [defendant's overall involvement in criminal activity] could not be completely kept from the jury.
Id. at 1135. In the present case, there is no evidence of such pervasive criminal activity or life-style. Nor is the evidence of the defendants' presence at the marijuana field relevant for any other purpose as was the evidence in Jacobson. It was error to admit this testimony as its only purpose was to corroborate the above referred erroneously admitted hearsay evidence that defendants were drug traffickers.
Appellants also assert as error the introduction of testimony about the acts, prior to the homicides, of Wilbur Weeks (father of defendant, Jerry Wayne Weeks) and Anthony Weeks (brother of defendant, Jerry Wayne Weeks). Testimony was received in evidence that on November 3, 1983, a "Joe" Weeks purchased a box of nine millimeter ammunition from Penney's Hardware in Pensacola and that on November 7, 1983, Wilbur Weeks bought a box of .380 ammunition, and said that his son had bought the wrong kind of ammunition and needed to exchange it. Apparently, "Joe" Weeks was actually Anthony Weeks, Jerry Wayne's brother. Additionally, testimony was received that a volunteer firefighter had seen a Ruger Mini-14 rifle in an out building of Wilbur Weeks' house a year and a half before the homicides. There was also evidence that Anthony Weeks registered a homemade boat on November 3, 1983 and bought a used pickup truck in Pensacola on November 5, 1983. The following table shows the particular items of evidence objected to and their connection with the case:

 Evidence of Acts of Wilbur and Anthony Weeks
 RELEVANCY
 EVIDENCE CONSIDERATIONS
1) Records of the purchase a) At time of purchase of
of 9mm. ammunition .380 caliber ammo on November
by a "Joe" Weeks on Nov. 7 (see item 2, infra),
3, 1983. Wilbur said he had to
 exchange ammo because
 his son had purchased the
 wrong type. 9 millimeter
 and .380 are often confused.
 Evidence indicated
 that Wilbur's son, Anthony,
 was the "Joe" Weeks
 who had purchased the 9
 mm. ammo which Wilbur
 exchanged.
2) Records of the purchase b) Some .380 pistol cartridge
of .380 ammo by casings were found
Wilbur on Nov. 7, 1983. at the scene. Wilbur
 Weeks, Anthony Weeks
 and Jerry Wayne Weeks
 each owned a .380 pistol.
 Such pistols were examined
 and found not to
 have fired the rounds from
 the casings recovered
 from the scene. Testimony
 showed that there are
 10 kinds of firearms capable
 of using .380 ammo.
 There was no evidence
 that Lester Wells owned a
 .380 firearm.

*718
3) Testimony by Al Kilbourn c) Some .223 rifle cartridge
and Mike Crawly casings were recovered
(an employee at Kilbourn's from the scene. A
gun shop) that Wilbur purchased Mini-14 can fire them. A
.223 ammunition Mini-14 was seen 1 1/2
and two clips for a Mini-14 years before the homicides
 in an out building on Wilbur's
 property. The ammo
 is the same brand as
 Kilbourn sells, but it is
 widely sold. Testimony
 showed that there are
 seven kinds of firearms,
 including the Mini-14,
 which are capable of firing
 .223 ammo. No firearm
 capable of firing .223 ammo
 was recovered from
 the scene, from the defendants,
 or from anyone
 else.
4) Testimony by a d) See item c above.
firefighter that he saw a
Mini-14 on Wilbur's property
one and a half years
before the homicides.
5) Records of Anthony's e) A lady testified that on
purchase of a light tan the morning of the homicides,
truck on Nov. 3 and she saw a white
registration of a homemade pickup truck put in a boat
boat on Nov. 5. at a public landing several
 miles from the crime
 scene. She was not able
 to describe the boat. Another
 witness testified
 that he saw a person he
 identified as Jerry Wayne
 Weeks operating a green
 boat on the river some distance
 from the public landing
 and that an unidentified
 person was also in the
 boat. There was testimony
 that Anthony's boat
 and truck were kept in
 Wilbur's barn to which
 Jerry Weeks had frequent
 access.

The state argues that the above evidence was admissible under the theory of acts of the defendants' coconspirators.
Acts which are in furtherance of a conspiracy are attributable to all coconspirators and may be used as original evidence against each of them. Honchell v. State, 257 So.2d 889 (Fla. 1971). In the present case, however, there is insufficient evidence of a conspiracy to admit these items on that theory. The elements of a conspiracy are (1) an agreement to commit a criminal act; and (2) an intention to commit the crime. Ramirez v. State, 371 So.2d 1063 (Fla. 3rd DCA 1979). There is no evidence in the record before us, circumstantial or otherwise, of any agreement involving Anthony or Wilbur to commit the homicides. There was no evidence to place them at the scene of the crime. None of the weapons or ammunition they purchased were tied to the scene of the crime except by the remotest speculation.
Although not admissible under a conspiracy theory, the above referred evidence regarding the truck and boat were otherwise admissible. As mentioned in item c above, the defendant, Jerry Wayne Weeks, who was identified by Enfinger as one of the perpetrators, was seen in a green boat which generally matched the description of a boat to which, as the testimony showed, he had access. However, as for the other items of evidence listed above, there was insufficient predicate to permit introduction, either under a conspiracy theory or otherwise.
Next, appellants assert as error the introduction of hearsay testimony including a tape-recorded conversation between Wilbur Weeks and Al Kilbourn, owner of a gun shop, which took place several days after the homicides. Kilbourn told Weeks the police were pressuring him into saying that the ammunition found at the scene came from his shop. Wilbur said, "I don't give a damn what comes down, don't you budge." It is not clear from the context of the conversation whether Wilbur was advising Kilbourn to lie about the ammunition, or just not to give in to the pressure. Also admitted were reports of statements made by Anthony and Wilbur to police investigators after the homicides. Although this evidence was clearly hearsay, the state argued that such was admissible under the coconspirator exception, Section 90.803(18)(e), Florida Statutes. Under this exception, the acts of Wilbur and Anthony may be attributed to the defendants only if a conspiracy is proven. Honchell, supra. There must be independent proof of the conspiracy presented either before or after the introduction of the hearsay. *719 The conspiracy need not be charged as long as it is proved to the judge by a preponderance of the otherwise admissible evidence. Tresvant v. State, 396 So.2d 733, 736 (Fla. 3rd DCA 1981), Saavedra v. State, 421 So.2d 725, 727 (Fla. 4th DCA 1982). As discussed above, the state failed to meet this burden.[8]
Moreover, these statements were made after the criminal acts which were the object of the conspiracy had occurred  some later that day and some after these defendants were charged. In Krulewitch v. U.S., 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949), the Supreme Court held that statements made after the completion of a conspiracy are not in furtherance of the conspiracy. Further, statements made which tend to shield "coconspirators" after the objective of the conspiracy is completed do not give rise to an additional conspiracy to cover up the original crime. 93 L.Ed. at 794. In the present case, the hearsay statements, all of which were made after the crimes were committed, were erroneously admitted. See U.S. v. Silverstein, 737 F.2d 864 (10th Cir.1984) (duration of conspiracy does not extend to attempts to conceal the crime); U.S. v. Howard, 752 F.2d 220 (6th Cir.1985) (tape recording of conversation between conspirator and government informant which did not advance conspiracy were erroneously admitted). The taped conversation between Wilbur and Al Kilbourn and the statements made by Wilbur and Anthony to investigators were erroneously admitted.
We have reviewed appellants' other points and find them to be without merit. We find that the erroneous admission of the taped interview with the victim, Billy Wyche, and the erroneous admission of the other evidence discussed above deprived the defendants of a fair trial.
REVERSED and REMANDED for a new trial.
SHIVERS and JOANOS, JJ., concur.
NOTES
[1] Although Enfinger's identification of the defendants as the perpetrators of these offenses was such as would support an affirmative finding by the trier of fact, we note that Enfinger's eyewitness identification was the subject of vigorous contest by defense counsel by alluding to such factors as the perpetrators being attired in camouflage clothing and hats, the relatively brief opportunity of Enfinger to see the perpetrators, the distance between Enfinger and the perpetrators, the fact that "everything happened so fast," etc. We mention these "detractors" because of their significance in the determination of the prejudicial impact of the trial court errors discussed herein.
[2] Anthony Weeks and the defendant, Jerry Wayne Weeks, are brothers. Wilbur Weeks is their father and the defendant, Lester Wells, is their cousin.
[3] Billy Dewayne Wyche had given an earlier taped statement which he later admitted was not truthful, thus, the impetus for the subsequent taped interview.
[4] We see nothing wrong with the state's introduction of the testimony of investigating officers regarding the nature of the charges  kidnapping and attempted murder  being investigated and the fact that the appellants were informed of the accusations thereof made by Billy Dewayne. However, see footnote 7, infra, for cautionary note.
[5] See discussion, infra, regarding testimony of police officers describing incident in which they were fired upon near a field where marijuana was growing.
[6] The state's "real evidence" argument seems to be predicated upon the proposition that the fact of the existence of the tape was, in itself, relevant and admissible on the basis that the defendants would be motivated to eliminate Billy Wyche because of the existence of the tape. And so the state says that the tape was not hearsay because it was not offered to prove the truth of what Wyche said on the tape. However, as conceded by the state at oral argument, the defendants were not aware of the existence of such tape. Moreover, contrary to its above stated theory of admissibility, the state, at oral argument, took the position that the defendants would have been less inclined to eliminate Billy Wyche if they had known that he had given the police a tape-recorded statement.
[7] We note appellants' argument that even if the tape were admissible, it might be prejudicial beyond its probative value because of the excessive detail about the prior alleged crime which is only relevant for purposes of showing motive. Since the tape was inadmissible, we do not pass on this point. However, to the extent that the state, on retrial of this case, offers proof, other than through Billy Wyche's inadmissible taped statement, of the kidnapping and attempted murder to establish motive or other theory under Williams v. State, 110 So.2d 654 (Fla. 1959), the trial court should see that the state exercises care in avoiding excessive detail so as not to run afoul of such holdings as Williams v. State, 117 So.2d 473 (Fla. 1960), Straight v. State, 397 So.2d 903 (Fla. 1981), Lawson v. State, 304 So.2d 522 (Fla. 3d DCA 1974), and Fleming v. State, 457 So.2d 499 (Fla. 2d DCA 1984).
[8] We note the distinction between the prima facie showing of conspiracy necessary to attribute nonhearsay evidence of the acts of third parties to the defendants and the more difficult preponderance of the independent evidence of conspiracy standard for this hearsay exception. We find the evidence fails to meet either of these standards.