568 So.2d 1331 (1990)
Gilbert SELVER, Appellant,
v.
STATE of Florida, Appellee.
No. 89-0505.
District Court of Appeal of Florida, Fourth District.
October 31, 1990.
*1332 Richard L. Jorandby, Public Defender and Jeffrey L. Anderson, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and John Tiedemann, Asst. Atty. Gen., West Palm Beach, for appellee.
WARNER, Judge.
The defendant appeals his conviction for first degree murder and his life sentence. Because of errors in the admission of collateral crime evidence and hearsay evidence, we reverse and remand for a new trial.
The state's case against the appellant was that the victim, Clinton Gibbs, was executed as a result of a drug deal gone sour. Appellant was portrayed as a drug boss, and Clinton Gibbs was one of his underlings. According to the state's case, about three weeks prior to the murder appellant had rented a car for Gibbs and had given him $12,000 in connection with a drug transaction. Gibbs apparently was ripped off, losing both the rental car and the money and not returning with any drugs. Three weeks later, while Gibbs was staying with friends in Miami, appellant and others came and took Gibbs away in handcuffs. He was driven to West Palm Beach where other witnesses accompanied appellant, his accomplice John Allen, and Gibbs to a location west of town where Gibbs was beaten and then shot to death by Allen.
Appellant's defense was both to attack the credibility of the witnesses who allegedly saw him with Gibbs and to call two witnesses who established an alibi for him at the time of the shooting. However, the jury convicted him of first degree murder. Appellant raises twelve points for reversal of his conviction and sentence. We find that two are properly preserved and require reversal of the conviction.

COLLATERAL CRIME EVIDENCE
One of the key witnesses against appellant was Dexter Smith. Smith testified that about a week before the murder appellant stopped by the automotive shop where Smith worked. Appellant told Smith that Gibbs had run off with fourteen ounces of his cocaine, a rental car, and money. He indicated that if he caught Gibbs, he would "bust him up."
Over appellant's objection, Smith testified that he and appellant had been partners in four to seven drug deals in 1984 and 1985. However, he had quit dealing with appellant because appellant was unfair. Appellant objected to this collateral crime evidence, because it was offered solely to show appellant's bad character when appellant had not placed his character in issue. See Williams v. State, 110 So.2d 654 (Fla. 1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); section 90.404(2), Florida Statutes (1987).
The state argues, however, that in this case the evidence regarding Smith's prior drug dealings with appellant was admissible as "inseparable crime" evidence, relying on Tumulty v. State, 489 So.2d 150 (Fla. 4th DCA 1986). In that case Tumulty was charged with murdering a pilot who had flown the last of several drug smuggling flights. The complicated facts revealed that Tumulty and Haas operated a drug smuggling business. After the delivery of three loads of drugs, Haas couldn't sell the fourth load of contraband, and the victim, the plane's pilot who was to get a share of the proceeds, decided to keep possession of the plane. He was ultimately killed for this conversion, at the direction of Tumulty whose part in the drug smuggling operation was also shut down by the loss of the plane. At trial Tumulty objected to the testimony regarding the three *1333 prior successful smuggling operations as being inadmissible collateral crime evidence. This court held that the three prior trips were relevant evidence because they were "inextricably intertwined" with the fourth trip and showed the scenario for the crime. The court noted that the motive for the killing was the victim's conversion of the plane which was indispensable to the partnership between Tumulty and Haas. In deciding that such evidence was inseparable evidence, this court adopted the comments of Ehrhardt, Florida Evidence, § 404.16 (2d Ed. 1984), which state that the reason for admitting such evidence is that it forms "part of the so-called `res gestae': it is necessary to admit the evidence to adequately describe the deed." He further notes that "both the language of section 90.404(2)(a) and of Williams indicates that the rule applies to evidence of discrete acts other than the actions of the defendant committing the instant crime charged." Ehrhardt, Florida Evidence at 138.
This court again addressed "inseparable crime" evidence in Huhn v. State, 511 So.2d 583 (Fla. 4th DCA 1987), a case of kidnapping and aggravated assault arising out of a drug rip-off. Over objection, one of the participants was allowed to testify to Huhn's involvement in prior drug transactions. The court found that these were irrelevant to the kidnapping and assault charges which arose out of only one transaction in which a rip-off occurred. The court in Huhn held that where the prior crimes had no bearing on the present crime, they were inadmissible.
This is the situation in the present case. Smith had absolutely no connection to the murder and kidnapping or to the underlying drug transaction rip-off which precipitated it. Smith's drug dealings with appellant ended in 1985, and this crime took place in 1986. There are no details of the dealings between Smith and appellant, so there is nothing to show a similarity with prior crimes. Thus, the prior crimes were not admissible to show motive. The only purpose for the prior drug deals evidence was to establish that appellant was a long time drug dealer, and Smith's testimony was the only direct evidence offered by the state of any drug dealings by appellant prior to this transaction. Nevertheless, appellant's position as a drug boss in an ongoing drug enterprise was the feature of the state's case. It was error to admit the evidence of prior drug dealings. Under the standard of State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), we cannot say it was harmless.

HEARSAY STATEMENTS OF THE VICTIM
During the trial several witnesses testified to statements made by the victim at various times prior to his kidnapping and murder. The appellant objected to the following statements:
(1) Mr. Gibbs' wife's testimony that Gibbs came home two weeks before his death and stated "he had some money that belonged to some people and he got ripped off."
(2) Gibbs' brother, David Johnson, testified that two weeks before the murder Gibbs said that he was in a deal, that the deal had gone sour, that he wanted to leave the country, and that if he didn't leave he would get shot.
(3) Gibbs' brother, Linley Goldman, testified that Gibbs had told him about two days before he died that appellant had given him some money to buy cocaine, that the police had taken his car and he didn't know what happened to the money, and if he didn't have the money soon, appellant would do something to him.
While appellant argues that these were inadmissible hearsay statements, the trial court admitted them under the state of mind exception discussed in Peede v. State, 474 So.2d 808 (Fla. 1985). In Peede the trial court had admitted the testimony of the murder victim's daughter that her mother (the victim) told her that she was going to pick up the defendant at the airport, that she was nervous and scared that she might be in danger, and that her daughter should call the police if she was not back by midnight. The Supreme Court held that such testimony regarding the mental state of the victim was admissible under section *1334 90.803(3)(a), because in order to establish the kidnapping on the felony-murder charge the state had to prove that the defendant had forcibly abducted the victim against her will. The court held that the statement served to prove the declarant's state of mind not to voluntarily accompany the defendant outside of the city.
The state argues that the hearsay statements in the instant case are admissible for the same purpose  to show the victim's state of mind in connection with the kidnapping charge. The rule permits admission of hearsay statements which:
Prove the declarant's state of mind ... at that time or at any other time when such state is an issue in the action.
Fla. Stat. 90.803(3)(a)1.
In Peede the state of mind of the victim on the evening the statements were uttered was an issue, and the statement directly addressed the victim's intent not to voluntarily be with the defendant past a certain time period or physical location. However, the statements in the present case indicate only a generalized fear of someone, later identified in the statement to Goldman as appellant, at times well in advance of the actual kidnapping. They do not evince the specific intent which is in issue, namely the intent not to voluntarily accompany the appellant on the date of the murder. Statements of a murder victim that express general fear of the defendant or a concern that defendant may intend to kill the victim are generally inadmissible hearsay. Correll v. State, 523 So.2d 562 (Fla. 1988); Kennedy v. State, 385 So.2d 1020 (Fla. 5th DCA 1980).
Even if it is assumed that the statements somehow show the state of mind of the victim regarding the kidnapping, that does not end the inquiry. At best these statements only circumstantially prove the victim's state of mind, and they do so by stating the material facts of the failed drug transaction between the appellant and the victim. These are extraneous facts to the state of mind of the appellant, and while they may explain why he feared appellant and thus may not have voluntarily accompanied him, this is classic hearsay offered to prove the truth of the matter asserted. Thus, we must consider whether the arguably relevant evidence in the statements, namely the victim's fear of appellant, is rendered inadmissible by this extraneous and inadmissible hearsay. Florida Statute 90.403 provides:
Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.
In an authoritative discussion of the balancing process between the admission of Section 90.803(3)(a) state of mind hearsay with Section 90.403, the court in United States v. Brown, 490 F.2d 758 (D.C. Cir.1974), succinctly stated:
The rule then to be distilled from the better reasoned decisions is that a victim's extrajudicial declarations of fear of the defendant are admissible under the state of mind exception to the hearsay rule... only if there is a manifest need for such evidence, i.e., if it is relevant to a material issue in the case. Where there is a substantial likelihood of prejudice to the defendant's case in the admission of such testimony, it is inadmissible if it bears only a remote or artificial relationship to the legal or factual issues raised in the case. Even where there is substantial relevance, the additional factual matters in the statement may simply be too explosive to be contained by the limiting instruction, in which case exclusion of the testimony is also necessitated.
Brown, 490 F.2d at 773-774.
Applying the Brown analysis to the facts of this case, the statements of fear of appellant are only remotely relevant, as they do not describe the victim's state of mind on the night of the murder. Instead their main relevance is for the admission of the facts of the drug transaction between the victim and the appellant which would otherwise be inadmissible. There is a clear danger that the jury would misuse such evidence as proof of the truth of the drug transaction between the parties, which was the state's theory of the appellant's motive *1335 for the murder, especially since these statements are the only statements other than Dexter Smith's testimony which explained the drug dealings between appellant and the victim. Finally, the presentation of these statements while remotely relevant at best is needlessly corroborative of other far more compelling evidence that the victim did not voluntarily accompany the appellant on the date of the murder. The two friends with which the victim was staying both testified that appellant ordered the victim to accompany him and handcuffed him prior to leaving the home. Two other witnesses also testified that they saw appellant put the handcuffed victim in his car in West Palm Beach. The victim's generalized fear of the appellant expressed days and weeks before the murder provide no additional essential evidence on the state of mind of appellant not already present in the evidence regarding the abduction itself. Because of the inclusion of the highly prejudicial and inadmissible statements about the details of the drug transaction with the remotely relevant and needlessly corroborative testimony regarding the victim's state of mind, the admission of these three statements was error.
As with the testimony of Dexter Smith, we hold that the statements are reversible under the DiGuilio standard. Only Smith's testimony and the hearsay statements of the victim completely detailed the drug transaction between the victim and appellant, and Smith's credibility was under considerable attack. The victim's hearsay statements can only be considered harmless in this case if the matters contained therein were cumulative of other testimony on the same point. However, where they are cumulative of the testimony of a witness who has been extensively impeached by the defense and whose credibility is very much an issue, we cannot say that the admission of the hearsay was harmless beyond a reasonable doubt.
We therefore reverse the conviction and sentence of the appellant and remand for a new trial.
POLEN, J., concurs.
STONE, J., concurs specially with opinion.
STONE, Judge, concurring.
I concur in the majority opinion as to the collateral crime evidence. However, in my judgment it was not reversible error to apply Peede v. State in admitting the kidnap victim's statements. The admissability of such statements must vary from case to case to the extent that a statement may be less or more relevant and remote from the act of alleged kidnapping. I cannot say that it was an abuse of discretion to admit the evidence here, particularly in light of the corroborating evidence. Nor can I say as a matter of law that the victim's statements of fear were only remotely relevant or needlessly corroborative.