559 So.2d 1116 (1990)
Judy A. BUENOANO, Petitioner,
v.
Richard L. DUGGER, Etc., Respondent.
Judy A. BUENOANO, Appellant,
v.
STATE of Florida, Appellee.
Nos. 75213, 75346.
Supreme Court of Florida.
April 5, 1990.
*1117 Larry Helm Spalding, Capital Collateral Representative, Billy H. Nolas, Chief Asst. CCR, and Julie D. Naylor and Bret B. Strand, Assistants CCR, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen., and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for respondent and appellee.
PER CURIAM.
Judy A. Buenoano, under sentence of death and the governor's death warrant, petitions this Court for a writ of habeas corpus, appeals the trial court's denial of her motion for postconviction relief filed pursuant to rule 3.850, Florida Rules of Criminal Procedure, and seeks a stay of her scheduled execution. We have jurisdiction. Art. V, § 3(b)(1) & (9), Fla. Const.
The facts of this case are fully discussed in Buenoano's direct appeal reported at Buenoano v. State, 527 So.2d 194 (Fla. 1988). In that case, this Court affirmed Buenoano's conviction for first-degree murder and sentence of death. A death warrant was signed by the governor with execution set for January 25, 1990. A petition for writ of habeas corpus was filed in this Court, and a motion to vacate was filed in the circuit court pursuant to rule 3.850. The circuit court summarily denied relief without an evidentiary hearing. On January 24, 1990, this Court entered an order for stay of execution. Buenoano's appeal from the trial court's ruling has been consolidated with the separate habeas petition.
*1118 The grounds urged for relief in the habeas petition and the appeal of the denial of the rule 3.850 motion overlap and are as follows: (1) the trial court gave improper jury instructions for the aggravating factor of heinous, atrocious, and cruel; (2) the sentencing proceeding was unreliable because the state presented unrebuttable hearsay testimony; (3) the state presented impermissible victim impact information during the guilt phase and the penalty phase in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987); (4) Florida's current death penalty statute, enacted after the charged offense was committed, was improperly applied retroactively; (5) the trial court erred in allowing the state to introduce inadmissible Williams[1] rule evidence; (6) the trial court erred in failing to find any mitigating circumstances; (7) the trial court failed to properly weigh the aggravating and mitigating circumstances; (8) the state presented improper arguments during the guilt phase and the penalty phase; (9) the jury was given instructions that improperly shifted the burden to Buenoano to prove that death was inappropriate; (10) the jury was improperly told that sympathy and mercy toward Buenoano were improper considerations; (11) the trial court improperly instructed the jury on the application of the cold, calculated, and premeditated aggravating circumstance; (12) Buenoano was denied a fair trial because she stood trial in leg irons; (13) the sentencing jury was misled by instructions given by the trial court and arguments made by the state that diluted its sense of responsibility for sentencing; (14) the trial court improperly instructed the jury that a verdict of life requires a majority vote; (15) the sentencing jury was improperly instructed on the aggravating factor of pecuniary gain; (16) Buenoano's death sentence is unconstitutional because her prior convictions, which were used in aggravation, were unconstitutionally obtained; (17) Buenoano was denied effective assistance of counsel for failing to argue error under Richardson v. State, 246 So.2d 771 (Fla. 1971); (18) Buenoano was denied effective assistance of counsel for counsel's failure to obtain a waiver from Buenoano concerning the statute of limitations on any applicable lesser included offenses; (19) Buenoano was denied effective assistance of counsel for counsel's failure to provide a complete record on appeal; (20) Buenoano was denied effective assistance of counsel for counsel's failure to investigate and present information in mitigation regarding Buenoano's background; and (21) Buenoano was denied effective assistance of counsel due to a conflict of interest between Buenoano and trial counsel over a contract they entered with each other concerning book and film proceeds.
Initially, we note that claims (1) through (15) either were raised or should have been raised on direct appeal.[2] These claims are procedurally barred and will not be addressed. In claims (17) through (21), Buenoano asserts that she was denied effective assistance of counsel at both the guilt and penalty phases of her trial and during her direct appeal.[3] After reviewing the record in its entirety, we find no evidence to support the contention that counsel's performance, even if perceived as deficient, prejudiced the outcome of the proceedings.[4]
As her twentieth claim, Buenoano argues that counsel was ineffective for failing to investigate her family background and emotional history and present this information as mitigation at the penalty *1119 phase of her trial. Buenoano contends that had counsel investigated these matters, he would have discovered significant information regarding her impoverished upbringing and dysfunctional psychological state. For example, counsel would have discovered that as a child Buenoano was separated from her family at a young age following the death of her mother. She was frequently removed from one family, foster home or orphanage and placed in another. There are reports of sexual abuse. When Buenoano was eventually examined by mental health experts following her incarceration, the reports reveal evidence of psychological problems. Additionally, Buenoano asserts that at her sentencing proceeding, a mental health expert would testify that she is emotionally disturbed and lacks the ability to conform her conduct to the requirements of law.
Under the principles established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant alleging ineffective assistance of counsel must demonstrate that counsel's performance was deficient and that the deficient performance affected the outcome of the trial proceedings. Even though counsel's performance may have been deficient because he failed to investigate and present mitigating evidence to the jury, we are not persuaded that this failure was prejudicial to Buenoano in light of the facts of this case.
Among the evidence presented to the jury was that Buenoano systematically and methodically administered arsenic poison to her husband and later, to a live-in boyfriend, which eventually resulted in their deaths. She administered paraformaldehyde poison to yet a third man, which caused him to be hospitalized. This man testified that after he refused to ingest the vitamin capsules discovered to contain the poison, he suspected Buenoano was responsible for arranging to have a bomb explode in his car. The jury was told that Buenoano had been convicted in the drowning death of her disabled son. Following the deaths of her victims, Buenoano collected proceeds from the various life insurance policies she owned on them. Additionally, one witness testified that Buenoano never discussed ending her marriage by divorce, but only discussed solving her marital problems by poisoning her husband. Still another witness testified that Buenoano advised her not to divorce her husband but to take out a life insurance policy on him and then poison him with arsenic. Two witnesses testified that Buenoano admitted she killed James Goodyear.
In our opinion the mitigation evidence Buenoano suggests should have been presented to the jury in no way would be sufficient to overcome the overwhelming evidence presented against her at trial. This case is precisely the type of case in which one reasonably could conclude that in light of the facts presented in the guilt and penalty phases, the jury would not have weighed the evidence any differently even if the omitted mitigation evidence had been presented. We do not believe the unfortunate circumstances of Buenoano's childhood are so grave nor her emotional problems so extreme as to outweigh, under any view, the four applicable aggravating circumstances.[5] This mitigation could not have overcome these factors nor the evidence that Buenoano methodically killed her husband by poisoning him, that she was suspected of killing another individual in the same way, that she attempted to poison yet a third, and that she had been convicted of killing her son.
As her last claim, Buenoano asserts that counsel was ineffective for creating a conflict of interest between himself and Buenoano. She claims a conflict arose as a result of a contract she made with her counsel midway through the penalty phase, which assigned counsel an interest in any film or book proceeds Buenoano may receive *1120 as a result of the trial proceedings. Buenoano argues that by entering this contract, counsel created a clear conflict of interest or, at a minimum, raised a considerable suspicion that his representation of Buenoano may have been compromised to further his own interests.
As support for this contention, Buenoano relies on the case of Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), in which the United States Supreme Court addressed the issue of attorney-client conflict of interest in the context of multiple defendant representation. In distinguishing possible conflicts of interests from actual conflicts of interests, the Supreme Court held that an allegation of a possible conflict does not result in the conclusion that a defendant received inadequate representation. On the other hand, in those instances in which a defendant can show a conflict of interest that actually affected the adequacy of representation, prejudice need not be demonstrated in order to obtain relief. Id. 446 U.S. at 349, 100 S.Ct. at 1718. Buenoano claims that to receive relief under Sullivan, an evidentiary hearing must be held so she can show a conflict of interest existed that affected her counsel's performance. Such proof, she argues, would result in a presumption of prejudice.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court explained its decision in Cuyler v. Sullivan. As described earlier, the Court in Strickland held that a two-part test must be met to establish ineffective assistance of counsel. First, counsel's performance must be shown to have been deficient. Second, the deficient performance must have actually prejudiced the client. Applying that rationale to its earlier decision in Sullivan, the Court said that a conflict of interest is so egregious a violation that it clearly establishes the first prong of Strickland and gives rise to a presumption of prejudice to satisfy the second prong, even in the absence of other proof of actual prejudice. Strickland, 466 U.S. at 692, 104 S.Ct. at 2067. However, the Court specifically noted that the presumption of prejudice for conflicts of interest is not quite the per se rule of prejudice that exists for certain other sixth amendment claims such as the denial of the right to counsel. Id. Therefore under certain circumstances the presumption of prejudice in conflict cases could be rebutted if other evidence against a defendant is so overwhelming that prejudice could not be found merely because of the conflict of interest.
Buenoano claims an evidentiary hearing would reveal numerous errors and omissions by counsel at trial and on direct appeal to establish that a conflict of interest actually affected counsel's performance. These errors and omissions are the same as the ones argued in the claims of ineffectiveness contained in Buenoano's petition for habeas corpus relief and in her appeal of the denial of the rule 3.850 motion.[6] After reviewing the record, we believe that even if Buenoano could demonstrate that counsel's alleged acts and omissions in this case were a result of the conflict of interest, the presumption of prejudice was overcome. In light of the unusual facts of this case, we are not persuaded that the acts and omissions to which Buenoano refers, even if true and even if caused by a conflict of interest, resulted in prejudice necessary to overcome the overwhelming evidence of guilt. We are not convinced the outcome of the proceedings would have been different if counsel had performed in the manner in which Buenoano urges. Under any view, the outcome of the proceedings would have been the same.
Finally, we do not reach claim (16), in which Buenoano argues that her death sentence is unconstitutional because the prior convictions used in aggravation allegedly were obtained unconstitutionally. As Buenoano acknowledges, this issue is not ripe for review.
Accordingly, the petition for writ of habeas corpus is denied, the trial court's denial *1121 of the motion for postconviction relief is affirmed, and we vacate the temporary stay of execution, which was previously entered.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NO MOTION FOR REHEARING WILL BE ALLOWED.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[2] Claims (2), (3), (4), (5), and (8) were raised on direct appeal. Claims (1), (6), (7), (9), (10), (11), (12), (13), (14), and (15) should have been raised. Buenoano also argues that trial counsel was ineffective in raising the above claims on appeal and was ineffective for failing to raise those claims that should have been raised.
[3] The attorney who represented Buenoano at trial was also her counsel on appeal.
[4] Likewise, we find no evidence in the record to support Buenoano's claims that counsel was ineffective in arguing the issues raised on direct appeal or for failing to argue those issues that should have been raised.
[5] The four aggravating circumstances found to apply were: 1) the defendant was previously convicted of another felony involving the use or threat of violence; 2) the murder was committed for pecuniary gain; 3) the murder was especially heinous, atrocious, or cruel; and 4) the capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.
[6] These claims, numbers (17) through (20), have been reviewed, and we have found either that counsel's performance was not deficient or that any deficiency did not affect the outcome of the trial.