748 So.2d 253 (1999)
Robert Ira PEEDE, Appellant,
v.
STATE of Florida, Appellee.
No. 90,002.
Supreme Court of Florida.
August 19, 1999.
*254 John W. Moser, Capital Collateral Regional Counsel-Middle Region, Christopher DeBock, Assistant CCRC-Middle Region, Syed S. Ahmed and Abigail O. Dressel, Staff Attorneys-Middle Region, Tampa, Florida; and Robert Ira Peede, pro se, Raiford, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Katherine V. Blanco and Scott A. Browne, Assistant Attorneys General, Tampa, Florida, for Appellee.
PER CURIAM.
Robert Ira Peede appeals the summary denial of his initial motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the following reasons, we reverse and remand for an evidentiary hearing on Peede's Brady[1] claim, most of his ineffective assistance of counsel claims, his mental competence claims, and his public records request.

PROCEEDINGS TO DATE
In 1984, Peede was convicted for the first-degree murder of his estranged wife, Darla Peede. The facts in this case are set forth in greater detail in Peede v. State, 474 So.2d 808 (Fla.1985). The evidence at trial established that Peede returned to Miami to convince Darla to go to North Carolina and serve as a decoy in an alleged scheme Peede had to kill his ex-wife and her boyfriend. Peede telephoned Darla and she agreed to pick him up at the airport. However, instead of returning to Darla's home as intended, they mistakenly got on the Florida Turnpike heading for Orlando. As they left the Miami area, Peede pulled a lock-blade knife and inflicted a superficial cut in Darla's side. Subsequently, outside of Orlando, Peede stopped the car, jumped into the back seat, and stabbed Darla in the throat. As a result of this injury, Darla bled to death. Peede was arrested in North Carolina before carrying out his scheme to murder his ex-wife, and he confessed to Darla's murder.
After his trial and conviction, a jury recommended the death penalty. The trial judge followed the jury's recommendation and sentenced Peede to death, finding three aggravating factors[2] and one mitigating circumstance. The trial court found in mitigation that Peede was under the influence of extreme mental or emotional disturbance, but attributed little weight to this finding. On appeal, this Court affirmed Peede's conviction and, although we found that the murder was not cold, calculated and premeditated (CCP), we nevertheless upheld the death penalty. See Peede v. State, 474 So.2d 808 (Fla. 1985). On June 23, 1986, the United States Supreme Court denied Peede's petition for writ of certiorari.[3]
*255 On May 6, 1988, the governor signed a death warrant and on June 6, 1988, Peede filed an emergency 3.850 motion to vacate the judgment of conviction and sentence, raising fifteen issues. The fifteen claims were: (1) that Peede was not competent to stand trial; (2) that he received an inadequate psychiatric evaluation; (3) that he received ineffective assistance of counsel; (4) that counsel was ineffective in failing to present an insanity defense; (5) that there was a Brady violation; (6) that the instructions diminished the responsibility of the jury; (7) that the jury instruction on jurisdiction was improper; (8) that there was an improper instruction to the jury shifting the burden of proof to Peede during the penalty phase; (9) that the jury instructions created an automatic aggravating circumstance; (10) that the instructions in the guilt phase were unconstitutional for failing to explain the unanimity requirement; (11) that there was an improper instruction to the jury that a majority vote was needed for a life recommendation; (12) that a jury instruction unconstitutionally shifted the burden of proof of mitigation to the defendant; (13) that the trial court failed to consider all nonstatutory mitigation; (14) that the death sentence was imposed based on an unconstitutionally obtained prior conviction; and (15) that there were due process violations where the State presented the factual basis for the prior guilty pleas at the sentencing phase. The State's response conceded that an evidentiary hearing was proper on the claims relating to Peede's competency to stand trial, the adequacy of his psychiatric evaluation, ineffective assistance of counsel, and the alleged Brady violation. The trial court granted Peede's application for stay on June 24, 1988, and stayed his execution indefinitely. On October 7, 1988, the trial judge scheduled a four-day evidentiary hearing which apparently never took place.
Subsequently, on February 21, 1995, Peede filed an amended 3.850 motion, expanding upon his prior fifteen issues and raising six additional issues. The six new issues were: (1) whether the death penalty is constitutional; (2) whether this Court failed to conduct a meaningful harmless error analysis concerning the CCP finding; (3) whether the sentencing court failed to properly and timely impose a written sentence of death; (4) whether improper hearsay testimony was admitted; (5) whether the prohibition against interviewing jurors after trial is constitutional; and (6) whether state agencies improperly withheld files and records in violation of chapter 119, Florida Statutes (1993). The State opposed this amended motion on the ground that it was untimely filed.
On June 21, 1996, the trial court summarily denied all of Peede's claims even though the State had conceded the need for an evidentiary hearing on certain claims and the trial court had scheduled a four-day evidentiary hearing. It was not clear from the order whether the judge had considered the claims raised in the amended motion. However, in a subsequent order dated January 28, 1997, the judge stated that he had considered and addressed the claims raised in Peede's amended motion when he denied all relief. Because the new claims raised in the amended motion were not addressed specifically in his order, we assume that the trial judge found these issues procedurally barred or improperly pled when he wrote in his initial order that "the remaining claims are either procedurally barred or improperly pled." This appeal follows.[4]

*256 APPEAL[5]
On appeal, Peede essentially alleges that the trial court erred in summarily denying the claims raised in his 3.850 motion.[6] We affirm the trial court's summary denial of claims (6), (7), (8), (9), (10), (11), (12), (13), (14) and (15) of Peede's original rule 3.850 motion. We also affirm the trial court's denial of claims (1), (2), (3), (4) and (5) of the newly added claims in the amended motion for postconviction relief. We reverse and remand for an evidentiary hearing on the remaining claims.[7]
Preliminarily, however, we address Peede's first claim on appeal that because both the State and the trial court had conceded the need for an evidentiary hearing, his due process rights were violated when the trial court reversed its earlier ruling and denied the evidentiary hearing. Although the State's concession can be a relevant factor in the trial court's decision to grant an evidentiary hearing, such concession *257 is not dispositive as to the actual need for one; this determination is ultimately made by the trial court, subject to appellate review. See Swafford v. State, 636 So.2d 1309, 1310 n. 4 (Fla.1994). We find no merit to Peede's claim on this issue. For the remainder of Peede's claims, we apply the following standard of review.

Standard of Review
To uphold the trial court's summary denial of claims raised in a 3.850 motion, the claims must be either facially invalid or conclusively refuted by the record. See Fla. R.Crim. P. 3.850(d). Further, where no evidentiary hearing is held below, we must accept the defendant's factual allegations to the extent they are not refuted by the record. See Lightbourne v. Dugger, 549 So.2d 1364, 1365 (Fla.1989).

Public Records Request
Peede alleges that he has not received any records pursuant to his request under chapter 119 of the Florida Statutes. The trial court failed to address this issue in its order and, so far as we can tell, the issue was not addressed at any hearings conducted below. Because we are unable to determine the merits of this claim on the present record and we are remanding for an evidentiary hearing, we remand without prejudice for Peede to again present this claim to the trial court, recognizing that Peede retains the burden of sufficiently alleging and establishing his entitlement to public records or other discovery in accord with the rules applicable to postconviction proceedings.

Brady Claims
Peede alleges that the State committed a Brady violation by withholding independent evidence of Darla's loving relationship with him. Specifically, he claims the State withheld a part of Darla's diary written four months before her murder that expressed her love for Peede and her desire to reunite with him in Miami. He claims that he could have used these statements to contradict the State's kidnaping theory and to negate the inferences drawn from Darla's daughter's testimony that her mother was scared of Peede and would not have agreed to accompany him to Orlando or North Carolina. At trial, the State presented and argued a theory of felony murder based on an underlying kidnaping. In part through the testimony of witnesses who testified that Darla was terrified of Peede and would never have accompanied him voluntarily on an extended trip, the State sought to prove that Peede forced the victim to accompany him. In particular, Darla's daughter testified that Darla had told her that if she did not return promptly from the airport, she should notify the police. Since it was conceded that Darla had initially joined Peede voluntarily, the State used this testimony to attempt to prove the lack of consent element of the crime of kidnaping, and as a result, in the penalty phase, the trial court actually found that the murder was committed in the course of a kidnaping. In fact, in his order denying all claims, the trial judge correctly recognized that this was a very important issue because if the statements proved what Peede claimed they would, they would undermine the lack of consent element of kidnaping, the underlying felony in this case.
As to this Brady claim, the State conceded the need for an evidentiary hearing to determine if the disputed materials had been made available, while maintaining that it had afforded Peede's counsel an opportunity to inspect all items subject to disclosure. The record reflects that both Peede and the State appear to have conformed to the required discovery rules. Peede provided the State with his demand for discovery, and the State responded by providing Peede with the opportunity to inspect all items subject to disclosure. However, the record does not disclose whether the State had possession of the diary in its files or whether Peede had access to it. Therefore, we find that the record does not clearly refute Peede's factual *258 allegations, and, as conceded by the State, an evidentiary hearing is warranted on this issue.
Peede also claims that the State improperly withheld evidence establishing Peede's longstanding mental illness. Specifically, he alleges that the State's files contain sworn statements and reports of interviews with many witnesses regarding Peede's history of bizarre and self-destructive behavior that could have affected the opinion rendered by Peede's mental health expert and the jury's consideration of aggravating and mitigating factors. Again, we find that the record does not clearly refute Peede's factual allegations on this issue; therefore, we remand for an evidentiary hearing concerning these allegedly withheld statements.

Ineffective Assistance of Counsel
Peede asserts that his trial counsel rendered ineffective assistance throughout the proceedings and thereby raises numerous errors and deficiencies. Of course, in order to establish ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficiency sufficiently prejudiced the defense so as to undermine judicial confidence in the outcome. See Strickland v. Washington, 466 U.S. 668, 696-97, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If either prong is not proven, the claim must fail. See id. at 697; Kennedy v. State, 547 So.2d 912 (Fla.1989).
As a preliminary matter, we find no merit to the State's argument that some of Peede's claims were legally insufficient simply because he did not allege the specific witnesses who would testify at the evidentiary hearing. Rule 3.850 requires defendants to allege "a brief statement of the facts (and other conditions) relied on in support of the motion." Fla. R.Crim. P. 3.850(c)(6). Although this Court has found that mere conclusory statements alleging ineffectiveness are insufficient, see, e.g., Kennedy v. Singletary, 599 So.2d 991 (Fla. 1992), we have not required defendants to allege the witnesses who are available to testify at the evidentiary hearing. See, e.g., Valle v. State, 705 So.2d 1331, 1333 (Fla.1997).
We treat Peede's allegations of ineffective assistance of counsel as a single claim, although they are based on a number of different factual bases. Many of his individual allegations are substantially interrelated, and they are not all refuted by the record.[8] For example, as his first specific ineffective assistance of counsel claim, Peede alleges that defense counsel failed to assist the court-appointed psychiatrist, Dr. Robert Kirkland, with his pretrial evaluation of Peede and failed to provide the doctor with important background information. The record reflects that Dr. Kirkland was appointed by the court to evaluate Peede before trial and that he found Peede competent to stand trial.
Peede alleges that in conducting his evaluation, Dr. Kirkland did not have available or review any hospital or medical records, nor did he interview any of Peede's family or friends or others familiar with his personal history. For example, Peede alleges that this additional information, available but not sought by counsel, would have revealed a rare and debilitating *259 skin disease that he suffered as a child that prevented him from engaging in all activities and contributed to his serious mental illness. His family and friends could have stated how Peede was ridiculed by other children because of this condition. These records would also support his history of self-mutilation and attempted suicide after his break-up with his first wife. Finally, his family and friends could have provided information about his troubled family and childhood history.
In further support of this claim, Peede alleges that Dr. Kirkland's evaluation of Peede was inadequate and consisted solely of an interview of Peede lasting two hours and ten minutes and that counsel should have questioned the adequacy of this examination. He also contends that, although Dr. Kirkland testified at the penalty phase that he had considered the possibility that organic brain damage could have been one cause of Peede's illness, Dr. Kirkland failed to order further, more definitive evaluations. Moreover, Peede maintains that at an evidentiary hearing, he could now produce Dr. Stephen Teich, a board-certified forensic psychiatrist, who would testify that Peede's serious and preexisting mental illness went undiscovered and could well have affected Dr. Kirkland's evaluation of Peede.
Peede also alleges that defense counsel was ineffective for failing to investigate and present evidence of two other important statutory mitigators that was available through mental health testimony: (1) substantial impairment of capacity to conform conduct to the requirements of law, see § 921.141(6)(f), Fla. Stat. (1997); and (2) acting under extreme duress. See id. § 921.141(6)(e). Because there is a factual dispute as to whether defense counsel was ineffective for failing to discover and produce evidence as to Peede's personal history of mental problems, we find that an evidentiary hearing is required on this claim.
Peede also alleges that defense counsel was ineffective in failing to present as nonstatutory mitigation Peede's childhood history, his history of self-mutilation and attempted suicide, and the skin disease he suffered as a child that prevented him from engaging in many activities and caused him much ridicule. We find that Peede alleges sufficient facts about the existence of this mitigation and counsel's failure to investigate or present it that are not refuted by the record; therefore, an evidentiary hearing on this claim should have been held.
We also agree that the State was correct in conceding the need for an evidentiary hearing as to the issues raised by Peede concerning his mental competency, the adequacy of the examinations into his competence, and, especially, the adequacy of his counsel's investigation and representation concerning the mental issues.

CONCLUSION
Accordingly, for the reasons expressed, we affirm in part and reverse in part the trial court's order denying relief. We direct the trial court to hold an evidentiary hearing and to do so without delay.
It is so ordered.
HARDING, C.J., SHAW, ANSTEAD and PARIENTE, JJ., and OVERTON, Senior Justice, concur.
WELLS, J., concurs with an opinion.
WELLS, J., concurring.
I concur with the remand of this case for evidentiary hearing. However, I concur only as to those issues regarding which the State conceded the necessity for an evidentiary hearing in 1988.
I adopt my concurring opinion in Jones v. State, 740 So.2d 520, 524 (Fla. 1999).
NOTES
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[2] The three aggravating factors found by the trial court were: (1) previous conviction of two felony crimes involving the use of force or threat to another person; (2) murder committed during the commission of a kidnapping; and (3) murder committed in a cold, calculated and premeditated manner.
[3] Peede v. Florida, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 575 (1986).
[4] At the outset, we feel obliged to comment on the inexplicable delay in this case. As previously mentioned, on July 5, 1988, the trial court stayed Peede's execution and on October 7, 1988, it scheduled an evidentiary hearing for November 28, 1988. At this point, the State and Peede filed several motions for continuances. The record reflects that on September 7, 1989, the State filed the last motion for continuance. The trial court granted the motion on September 15, 1989, and continued the case indefinitely until a future date to be determined by the court. On October 6, 1989, Peede filed a notice of supplemental authority. This was the last action on the case until Peede filed his amended motion on February 21, 1995, some six years later. There is no explanation for this time lapse in the record. However, we stress that the State is the party especially charged with the burden to see that these cases are disposed of in a timely matter, especially in cases where the State has received the final continuance.
[5] We are also constrained to comment on the representation afforded Peede in these proceedings. Peede's brief on appeal raised nine issues, but was only 24 pages in length. While we are cognizant that quantity does not reflect quality, the majority of the issues raised were conclusory in nature and made it very difficult and burdensome for this Court to conduct a meaningful review. In all of his postconviction proceedings, Peede has been represented by Capital Collateral Representative (CCR) and Capital Collateral Regional Council-Middle District (CCRC). His initial and amended 3.850 motions were field by CCR attorneys in the Tallahassee office and his brief on appeal was field by an attorney in the CCRC Tampa office. His reply brief was actually filed "pro se" with the help of a separate ghost attorney. In many respects, this brief was more helpful and comprehensive than the initial brief filed. In addition to the poor quality of the initial brief, this Court has received several complaints concerning counsel's representation, including complaints by Peede himself. We note that in this past legislative session, the legislature amended section 27.710, Florida Statutes (Supp. 1998), by adding subsection (12) which states: "The court shall monitor the performance of assigned counsel to ensure that the capital defendant is receiving quality representation." Fla. CS for SB 2054 § 5 (1999).

Most of Peede's issues on appeal rely on the substance of the motions filed at the trial level or are simply conclusory in nature. In response to this exact type of practice, this Court has stated: "[T]he purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived." Duest v. Dugger, 555 So.2d 849, 852 (Fla.1990). In an abundance of caution, we have tried our best to phrase the issues raised on appeal as they correspond to the issues raised below and as they were addressed by the trial court. Nevertheless, we remind counsel of the ethical obligation to provide coherent and competent representation, especially in death penalty cases, and we urge the trial court, upon remand, to be certain that Peede receives effective representation.
[6] As best we can tell from the briefs in this case, the claims on appeal include: (1) the trial court's due process violation in summarily denying Peede's claims after both the State and the trial court had conceded the need for an evidentiary hearing and when the trial court failed to attach specific portions of the record; (2) the State's failure to disclose public records in violation of chapter 119; (3) Peede's incompetence to stand trial; (4) an expert's inadequate psychiatric evaluation; (5) trial counsel's ineffective assistance throughout the course of the trial; (6) the State's Brady violations; (7) the unconstitutionality of the capital sentencing statute; (8) the trial judge's improper instruction to the jury concerning aggravators; and (9) the trial court's failure to consider all nonstatutory mitigators. We will address claims (1), (2), (3), (4), (5), and (6). However, as stated above, claims (7), (8), and (9) are procedurally barred because they were raised or should have been raised on direct appeal. See Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla. 1995); Buenoano v. Dugger, 559 So.2d 1116, 1118 (Fla.1990).
[7] These are claims (1), (2), (3), (4) and (5) of the original motion and claim (6) in the amended motion and they represent claims (2), (3), (4), (5), and (6) on appeal.
[8] We do find, however, that the record conclusively refutes two of these claims: (1) the claim that trial counsel was ineffective for failing to effectively litigate the suppression of Peede's statements to police; and (2) the claim that counsel failed to object to improper jury instructions during voir dire. As to the first of these claims, the record reflects that defense counsel filed a motion to suppress Peede's statements made to the police. In fact, the record also reflects that Peede did not cooperate with defense counsel on this issue. As to the second of these claims, to the extent that Peede is alleging that the trial court improperly instructed the jury, the claim is procedurally barred because it should have been raised on direct appeal. See Buenoano v. Dugger, 559 So.2d 1116, 1118 (Fla. 1990). The record refutes the remaining portion of the claim. The judge's instructions to the jury were neutral on their face, and they merely inquired whether prospective jurors could follow the law. Therefore, counsel cannot be deemed ineffective for failing to object.